UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| RENAE DAWN JONES, | ) |
| | )Case No. CV 09-CV-317-N-EJL |
| Plaintiff, | ) |
| | )**MEMORANDUM ORDER** |
| vs. | ) |
| | ) |
| KOOTENAI COUNTY, KOOTENAI COUNTY | ) |
| SHERIFF'S DEPARTMENT, ROCKY | ) |
| WATSON, RICHARD LYONS, MATTHEW | ) |
| EDMUNDS, CLAY HILTON AND JOHN | ) |
| DOES 1-10, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**INTRODUCTION**

Pending before the Court in the above-entitled matter is Defendants Kootenai

County, Kootenai County Sheriff's Department, Rocky Watson, Richard Lyons, Matthew

Edmunds, Clay Hilton, and John Does 1-10's Motion for Summary Judgment.

(Collectively referred to as "Defendants") (Dkt. No. 22.) The Motion is made pursuant to

Federal Rule of Civil Procedure 56. The matter is ripe for the Court's consideration.

Having fully reviewed the record herein, the Court finds that the facts and legal

arguments are adequately represented in the briefs and record. Accordingly, and in the

interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this Motion shall be decided on the record before this Court without oral argument.

## FACTUAL AND PROCEDURAL BACKGROUND

The Complaint in this action alleges violations of 42 U.S.C. § 1983 in connection with the arrest and subsequent detention of Renae Dawn Jones by the Defendants. It is uncontested that on December 6, 2008, the Defendants Richard Lyons, Matthew Edmunds, and Clay Hilton, all Kootenai County Deputy Sheriffs (collectively referred to as "Defendant Deputies"), responded to a call at the Shanty Bar and Grill in Huetter, Idaho. The establishment had contacted the local police dispatch and requested assistance with an "unwanted person" whom the caller reported was refusing to leave, had punched a customer, and was drunk or disoriented. (Dkt. No. 22, Aff. Edmunds, Ex. B.) The parties recitation of the events that followed diverge somewhat.

The Complaint alleges Ms. Jones was "seated by herself in the Shanty Bar" when the Defendant Deputies "accosted, assaulted and battered [Ms. Jones] in and/or outside the Shanty bar, and physically removed her from the Shanty Bar, where [she] was violently and without any reason thrown to the ground." (Dkt. No. 1, ¶ 2.) Before being thrown to the ground, the Complaint states, she had been handcuffed and was unable to defend herself. As a result, the Complaint alleges, Ms. Jones was "lying helpless and completely restrained face-first on the ground" when Deputy Edmunds "jumped on the

back of [her] knee and leg, breaking it" and then stepped on the back of her head "pushing her face first into the pavement...." (Dkt. No. 1, ¶ 3.) The Complaint alleges that Deputy Edmunds then threatened her by saying "If you don't shut up, I'll do it to the other leg." (Dkt. No. 1, ¶ 3.) After which, the Deputies put her in "ankle cuffs and dragged her across the pavement on her knees, nearly wearing holes through the knees of her jeans." (Dkt. No. 1, ¶ 3.)

The Affidavits of the Defendant Deputies portray a different scenario. (Dkt. No. 22, Affs. Edmunds, Hilton, Lyons.) Upon arriving at the scene, the Defendant Deputies describe Ms. Jones as being extremely intoxicated, verbally abusive, belligerent, and resistive to arrest. (Dkt. No. 22, Affs. Edmunds, Hilton, Lyons.) The Defendant Deputies state that Ms. Jones twice attempted to grab Deputy Hilton's uniform shirt or badge which resulted in the her being handcuffed. (Dkt. No. 22, Affs. Hilton, Lyons.) When Ms. Jones refused to leave and/or move, claiming her leg hurt, the Defendant Deputies stated they carried her to their patrol car using the "fireman's safety carry" at which point she became hysterical, yelling, screaming, cursing, and threatening to kick the Defendant Deputies. (Dkt. No. 22, Affs. Edmunds, Hilton, Lyons.) Ms. Jones then, they claim, kicked out striking Deputy Edmunds in the shin and continued to kick out at the other officers. (Dkt. No. 22, Affs. Edmunds, ¶ 15.) As a result, the Defendant Deputies stated they restrained Ms. Jones' legs with a hobble strap and placed her in a patrol vehicle. All of the Defendant Deputies deny jumping on Ms. Jones' knee/leg, stepping on her head,

pushing her face first into the pavement, striking/taking her to the ground by force, or

dragging her across the pavement on her knees. (Dkt. No. 22, Affs. Edmunds, Hilton,

Lyons.) Because of her high level of intoxication and complaints of pain, the officers

called for medical personnel. When the medical personnel arrived, however, they were

unable to examine Ms. Jones due to her uncooperativeness at the scene. (Dkt. No. 22,

Affs. Edmunds, Hilton, Lyons.) Ms. Jones was then transported to the Kootenai County

Public Safety Building and booked for battery on a police officer in violation of Idaho

Code § 18-915.

Upon arriving at the Public Safety Building, the Defendants claim Ms. Jones

continued to be so uncooperative that medical aid could again not be provided. (Dkt. No.

22, Affs. Edmunds, Hilton, Lyons, Cox, Ex. A.) The following morning, on December 7,

2008, the Watch Log reflects that Ms. Jones' knee was evaluated and a small amount of

inflammation around the knee cap area and tenderness were noted. (Dkt. No. 22, Aff.

Cox, Ex. C.) Ms. Jones was given an ice pack and ibphrophen. On December 10, 2008,

Ms. Jones filled out an Inmate Request Form ("KITE") requesting medical attention.

(Dkt. No. 22, Aff. Cox, Ex. E.) On the same day, Ms. Jones was examined by a doctor at

the Kootenai County Jail and an x-ray was ordered. On December 11, 2008, an x-ray of

Ms. Jones' left leg revealed a fracture. (Dkt. No. 22, Aff. Cox.) Ms. Jones leg was put in a

brace and she was prescribed Hydrolapap for the pain. Ms. Jones claims she was deprived

of adequate medical care for five days by the Defendants' failure to attend to her injury. (Dkt. No. 27, p. 8.)

Ms. Jones was released from custody on December 19, 2008 and later pled guilty to the misdemeanor charge of disturbing the peace. She was sentenced to probation, fines, and jail time. (Dkt. No. 1, ¶ 10.) On June 29, 2009, Ms. Jones initiated this action by filing her Complaint and Demand for a Jury Trial (Dkt. No. 1) alleging four counts:

Count I:        42 U.S.C. § 1983 Action for Deprivation of Civil Rights, which alleges that the force used to arrest Ms. Jones was excessive.

Count II:       42 U.S.C. § 1985 Action for Conspiracy to Interfere with Civil Rights, which alleges that there was a conspiracy among the Defendants to deprive Ms. Jones of her constitutional rights.

Count III:      42 U.S.C. § 1983 Failure to Adequately Train & Supervise Police Officers, which alleges the Kootenai County Sheriff's Department is liable for the actions of its officers.

Count IV:       42 U.S.C. § 1983 Negligent Hiring, Retention and Failure to Discipline or Take Necessary Corrective Action, which alleges the same as Count IV.

On April 22, 2010, the Defendants filed a Motion for Summary Judgment on all counts as well as supporting materials. (Dkt. No. 22.) Ms. Jones filed an opposition to the Motion with an Affidavit of Ms. Jones that attached a copy of the Complaint. (Dkt. No. 27.) To which the Defendants have filed a reply. (Dkt. No. 28.)

# STANDARD OF LAW

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure. Rule 56 provides, in pertinent part, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion." Fed. R. Civ. P. 56(a).1 "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c).

The party moving for summary judgment has the initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 247-48 (1986). Once the moving party has met this initial burden, the nonmoving party has the subsequent burden of presenting evidence to show that a genuine issue of fact remains. The party opposing the

---

1 Federal Rule of Civil Procedure 56 was revised effective December 1, 2010. Though the Motion for Summary Judgment in this case was filed prior to December 1, 2010, the Court will apply the revised Rule 56 as applying it in this action is not infeasible and does not work an injustice. *See* Fed. R. Civ. P. 86(a)(2)(B).

motion for summary judgment may not rest upon the mere allegations or denials of her

pleading, but must set forth specific facts showing that there is a genuine issue for trial.

*Id*. at 248. If the non-moving party "fails to make a showing sufficient to establish the

existence of an element essential to that party's case, and on which that party will bear the

burden of proof at trial" then summary judgment is proper as "there can be no 'genuine

issue of material fact,' since a complete failure of proof concerning an essential element

of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).2

　　　　Moreover, under Rule 56, it is clear that an issue, in order to preclude entry of

summary judgment, must be both "material" and "genuine." An issue is "material" if it

affects the outcome of the litigation. An issue, before it may be considered "genuine,"

must be established by "sufficient evidence supporting the claimed factual dispute . . . to

require a jury or judge to resolve the parties' differing versions of the truth at trial." *Hahn*

*v. Sargent*, 523 F.3d 461, 464 (1st Cir. 1975) (quoting *First Nat'l Bank v. Cities Serv. Co.*

---

[2] *See also,* Rule 56(e) which provides:

(e)　　**Failing to Properly Support or Address a Fact.** If a party fails to properly support an
assertion of fact or fails to properly address another party's assertion of fact as required
by Rule 56(c), the court may:
　　(1)　　give an opportunity to properly support or address the fact;
　　(2)　　consider the fact undisputed for purposes of the motion;
　　(3)　　grant summary judgment if the motion and supporting materials--including the
　　　　　facts considered undisputed--show that the movant is entitled to it; or
　　(4)　　issue any other appropriate order.

*Inc.*, 391 U.S. 253, 289 (1968)). The Ninth Circuit cases are in accord. *See, e.g., British Motor Car Distrib. V. San Francisco Automotive Indus. Welfare Fund*, 883 F.2d 371 (9th Cir. 1989).

According to the Ninth Circuit, in order to withstand a motion for summary judgment, a party

> (1) must make a showing sufficient to establish a genuine issue of fact with respect to any element for which it bears the burden of proof; (2) must show that there is an issue that may reasonably be resolved in favor of either party; and (3) must come forward with more persuasive evidence than would otherwise be necessary when the factual context makes the non-moving party's claim implausible.

*Id.* at 374 (citation omitted). Of course, when applying the above standard, the court must view all of the evidence in the light most favorable to the non-moving party. *Anderson,* 477 U.S. at 255; *Hughes v. United States*, 953 F.2d 531, 541 (9th Cir. 1992).

## DISCUSSION

**1.     Count I: 42 U.S.C. § 1983 Excessive Force Claim**

Congress has created a cause of action against private individuals who, while acting under color of law, violate the constitutional rights of private citizens. *See* 42 U.S.C. § 1983 provides in pertinent part:

> Every person who, under color of any statute, […] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivations of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured.

*Id.* In order for a plaintiff to prevail on a § 1983 claim they must show that (1) the actor that deprived them of their rights acted under color of law and (2) that the action actually deprived them of a constitutional right. In this case (1) is not disputed by either of the parties; police officers carrying out their duties act under color of law. It is (2) which is at issue here with Ms. Jones' alleging her constitutional right to be free from excessive force incident to arrest was violated.

A.      ***Standard for Analyzing Excessive Force Claim***

The appropriate area of inquiry for a claim of excessive force incident to an arrest is the reasonableness test of the Fourth Amendment balancing the "nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing government interests at stake." *Graham v. Connor*, 490 U.S. 386, 396 (1989). In determining whether law enforcement officers used excessive and, therefore, "unreasonable" force in the course of an arrest, the Ninth Circuit requires the court to conduct a three-step analysis. "First, we assess the gravity of the particular intrusion on Fourth Amendment interests by evaluating the type and amount of force inflicted." *Miller v. Clark County*, 340 F.3d 959, 964 (9th Cir. 2003) (quoting *Graham*, 490 U.S. at 396-97) (citations and quotations omitted). Second, the court analyzes "the importance of the government interests at stake" by evaluating the *Graham* factors: (1) the severity of the crime at issue, (2) whether the suspect posed an immediate threat to the safety of the

officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* Third, the court must consider the totality of the circumstances and weight the gravity of the intrusion against the government's interest in order to determine whether the force employed was constitutionally reasonable. *Id.*; *see also Franklin v. Foxworth*, 31 F.3d 873, 876 (9th Cir. 1994) (stating the "inquiry is not limited to the specific *Graham* factors, ... [the court] must look to whatever specific factors may be appropriate in a particular case, whether or not listed in *Graham*, and then must consider 'whether the totality of the circumstances justifies a particular sort of seizure.'") (quoting *Graham*, 490 U.S. at 396); *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005)).

When weighing an excessive force claim, summary judgment is appropriate if the Court "concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's use of force was objectively reasonable under all circumstances." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994); *see also Graham*, 490 U.S. at 397 ("whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation."). Alternatively, "the court may make a determination as to reasonableness where, viewing the evidence in the light most favorable to [the plaintiff], the evidence compels the conclusion that [the officers'] use of force was reasonable." *Hopkins v. Andaya*, 958 F.3d

881, 885 (9th Cir. 1992). The Court can therefore find summary judgment if the force the officers used was appropriate in any circumstance, or if the circumstances in the specific case were such that the only conclusion is that the force was reasonable.

While considering this question the Court must be cognizant that "all determinations of unreasonable force must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Henrich*, 39 F.3d at 914 (quoting *Graham*, 490 U.S. at 396-97) (internal quotations omitted). In addition, a plaintiff can succeed on an excessive force claim only if they have suffered some compensable injury as a result of their treatment. *Graham* 490 U.S. at 394.

In the present case, Ms. Jones contends that the Defendant Deputies used excessive force when they restrained her by handcuffing and "hobbling" her legs and then stepping on her which, she argues, resulting in her left leg being broken. (Dkt. Nos. 1, 27.) In her Complaint, Ms. Jones alleges the Deputies violently and without reason threw her to the ground and inflicted "extreme physical brutality" upon her. (Dkt. No. 1, ¶ 2.) Such "violence," she claims, included the Deputies jumping on the back of her leg, stepping on the back of her head, threatening her, placing hand and ankle cuffs on her, and dragging her across the pavement on her knees. (Dkt. No. 1, ¶ 3.) Ms. Jones denies any resistance

on her part and describes herself as a "tiny, lone, unarmed, securely handcuffed female" who presented no threat to the "several large and heavily armed male police officers." (Dkt. No. 1, ¶ 6.) The Defendants counter with evidence by way of Affidavits and related materials that Ms. Jones was belligerent, resistant, threatening, and actually struck Deputy Edmunds by kicking him in the shin indicating the Deputies' actions in restraining her were justified. (Dkt. No. 22, Affs. Edmunds, Hilton, Lyons.) The Affidavits of the Defendant Deputies are consistent with one another and with the document and audio evidence the Defendants have submitted. (Dkt. No. 22, Affs. and Ex.)

The Defendants having presented such evidence that their conduct was not excessive force and that a reasonable officer would not have believed their actions to be excessive, Ms. Jones cannot defeat summary judgment by relying on conclusory allegations in her pleadings. *See Anderson*, 477 U.S. at 248. Ms. Jones has the burden of coming forward with specific facts as required by Rule 56 to show that the Defendant Deputies use of force against her was a violation of her constitutional rights. *Id.*; *see also* Fed. R. Civ. P. 56. The Supreme Court in *Celotex* reiterated that while the nonmoving party need not produce evidence that would be admissible at trial to oppose a summary judgment motion, they must make some showing of evidence above the bare assertions of the pleadings. *Celotex Corp.*, 477 U.S. at 324. Further, Rule 56(c) requires that a "party asserting that a fact cannot be or is genuinely disputed must support the assertion by"

either (A) citing to particular parts of materials in the record including affidavits or declarations or (B) "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A), (B). Ms. Jones has failed to do either.

Ms. Jones has offered nothing beyond the bare allegations in the Complaint to support her claims. There are no witnesses, statements, or affidavit beyond her assertions in the pleadings and the conclusory statements in the brief responding to the Motion that claims that the actions of the Defendant Deputies were excessive. Attached to the response brief opposing the Defendants' Motion is an Affidavit of Ms. Jones which merely refers back to the facts and allegations in the Complaint as being true and accurate. (Dkt. No. 27.)3 This is insufficient to satisfy the *Celotex* requirements for responding to a motion for summary judgment. *See Celotex*, 477 U.S. at 322-23. Failing

---

[3]"A verified complaint may be treated as an affidavit to oppose summary judgment to the extent it is based on personal knowledge and sets forth specific facts admissible in evidence." *See e.g. Keenan v. Hall*, 83 F.3d 1083, 1090 n. 1 (9th Cir. 1996) (citing *McElyea v. Babbitt*, 833 F.2d 196, 198 n. 1 (9th Cir. 1987)) (quotations omitted). The Complaint filed here, however, is not verified as it was not signed under the penalties of perjury that its contents were true and correct and the allegations were not based purely on the plaintiff's believe but on his personal knowledge. (Dkt. No. 1.) Ms. Jones' Affidavit does state that Ms. Jones is "acquainted with the facts in the Complaint and hereby swear that the facts as stated are accurate regarding the incidents of my arrest and incarceration" and "swear[s] under oath that the facts as presented in the Complaint are true and accurate." (Dkt. No. 27.) Again, this procedure by Ms. Jones does not satisfy *Celotex* as no evidence beyond the mere pleadings of the Complaint has been offered to rebut the record provided by the Defendants in this case.

to properly support an assertion of fact or address another party's assertion of fact, allows the Court to "consider the fact undisputed for purposes of the motion" or "grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). Thus, in analyzing the excessive force claim below, the Court will do so as provided for by Rule 56 in light of the submissions filed in this case.[4]

### (1) *Evaluating the Quantum of Force*

The Court begins the excessive force analysis by evaluating the type and amount of the actual force used to determine if it was objectively reasonable. *See Deorle v. Rutherford*, 272 F.3d 1272, 1279 (quoting *Headwaters Forest Def. v. County of Humboldt*, 240 F.3d 1185, 1198 (9th Cir. 2000) (The Court must "first assess the quantum of force used to arrest [the plaintiff] by considering the 'type and amount of force inflicted.'"). The Supreme Court has held that "[a]n officer's evil intentions will not make a Fourth Amendment violation out of an objectively reasonable use of force; nor will an officer's good intentions make an objectively unreasonable use of force constitutional."

---

[4] There is a discrepancy in the record as to how and when Ms. Jones injured her leg. There is some indication that the injury may have occurred prior to the Defendant Deputies arriving. (Dkt. No. 22, Aff. Edmunds, Hilton, Lyons, Cox, Ex. B.) The Defendant Deputies each state in their Affidavits that Ms. Jones complained of knee/leg pain during her refusal to move from the front entrance of the establishment. (Dkt. No. 22, Affs. Edmunds, Hilton, Lyons.) For the purposes of this particular issue on summary judgment, the Court will view the facts in the light most favorable to the Plaintiff and assume that Ms. Jones' leg was injured during the Defendant Deputies' actions in removing her from the scene.

*Graham*, 490 U.S. at 397. Thus, the actual force that was used in arresting Ms. Jones is the force that must be considered, regardless of the intentions of the Defendant Deputies during the event. *Parker v. Town of Swansea*, 310 F.Supp.2d 356, 367 (D. Mass. 2009) ("[T]he proper inquiry under the Fourth Amendment is not 'whether the police officer intended to brutalize a suspect or merely intended to discipline him,' rather, the question is whether the officer intended to perform the underlying violent act at all.") (quoting *Glasco v. Ballard*, 768 F.Supp. 176, 179 (E.D. Va. 1991).

Ms. Jones maintains the force used against her was "appallingly cruel," "violent," and "unreasonable." (Dkt. No. 27, pp. 6-7.) Ms. Jones goes further alleging the breaking of her leg and depriving her of adequate medical care for five days constitutes deadly force. (Dkt. No. 27, pp. 7-8.) In reaching this conclusion Ms. Jones misstates the rule regarding deadly force, arguing that "the actual infliction of 'serious bodily injury' is now defined as 'Deadly Force'" (Dkt. No. 27, p. 8.) It is true that the Ninth Circuit expanded what could be considered as deadly force in *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005). There the Ninth Circuit found that deadly force is determined by evaluating "whether the force employed 'creates a substantial risk of causing death or serious bodily injury.'" *Id.* at 706. Just because serious bodily injury resulted from the force employed, however, is not dispositive that deadly force was used. Rather the Ninth Circuit directs the Court to evaluate what the likelihood of serious bodily injury would be given a

particular use of force. While there is a risk of serious bodily injury resulting from physically restraining an individual in the manner employed here, the Court is not convinced that the level of force used here rises to the level of deadly force. The officers handcuffed, hobbled, and carried Ms. Jones to their patrol vehicle. This amount and type of force generally does not carry a substantial risk of serious bodily. The Defendant Deputies deny ever jumping, stepping, slamming, or dragging of Ms. Jones; which Ms. Jones has not rebutted. (Dkt. No. 22, Affs. Edmunds, Lyons, Hilton.)

Ms. Jones' other characterizations of the amount of force used in this case are similarly unpersuasive. Ms. Jones argues that the force used against her was "virtually indistinguishable" from the facts in *Davis v. City of Las Vegas*, 478 F.3d 1048 (9th Cir. 2007). (Dkt. No. 27, p. 6.) In that case the plaintiff, already in handcuffs and merely refusing to consent to a search of his person, was slammed headfirst twice into a wall with sufficient force to break his neck and pinned against the floor where the police officer rolled him onto his back and punched him in the face. *Davis*, 478 F.3d at 1052. This extreme example of excessive force bears little to no resemblance to the restraint measures used in this case. Ms. Jones also tries to draw a comparison with the plaintiff in *Deorle v. Rutherford*, 272 F.3d 1272, 1274-75 (9th Cir. 2001), arguing the "basic framework...closely matches the level of force used against Renee Jones..." and that the cases are "factually similar." (Dkt. No. 27, p. 7-8.) In that case, the plaintiff's eye injury

was caused when a lead filled beanbag fired from a police shotgun at lethal distance hit him in the face. *Deorle*, 272 F.3d, 1277-78. Again, there is no relation to that kind of force in the present case.

Under Kootenai County Police Department Policies, Ms. Jones' level of resistance towards the officers was a five out of six; described as "Active Aggression: Physical actions of assault." (Dkt. No. 22, Aff. Watson, Ex. A.) Such resistance warranted an appropriate response by the Defendant Deputies beginning with officer presence and verbal commands. (Dkt. No. 22, Aff. Watson, Ex. A.) Ms. Jones' failure to comply with the officer's commands and increasingly threatening conduct justified the Defendant Deputies' increasing level of response to control and de-escalate the situation. (Dkt. No. 22, Aff. Watson, Ex. A ¶ G.)

The Ninth Circuit has confirmed that this is an appropriate characterization and use of force in instances such as this where the defendant is actively resisting officers. In *Brooks v. City of Seattle*, 599 F.3d 1018 (9th Cir. 2010), the court found that summary judgment for the defendants was appropriate. In that cause the plaintiff was stopped for speeding and when she refused to sign a notice of infraction she was tased four times and a pain hold was applied before she was pulled out of the car. *Id.* at 1020-21. The court held that use of a taser is a Level 1 tactic "akin to 'pain compliance applied through the use of distraction, counter-joint holds, hair control holds, [and pepper spray]' and used to

control passively or actively resisting suspects." *Id.* at 1026 (alterations in original). The Ninth Circuit found that such techniques "involve a 'less significant' intrusion upon an individual's personal security than most claims of force, even when they cause pain and injury." *Id.* at 1027-28.

Similarly, in *Forrester v. City of San Diego*, 25 F.3d 804 (9th Cir. 1994) police used a variety of pain compliance techniques to move anti-abortion protesters. *Id.* at 805. Even though the use of these techniques resulted in a broken wrist and a pinched nerve, the Ninth Circuit held that "the force consisted only of physical pressure administered on the demonstrators' limbs in increasing degrees, resulting in pain." *Id.* at 807. The force used in this case does not rise to the levels of force used in *Davis* or *Deorle*. Here, the officers employed appropriate restraint techniques to control the situation with Ms. Jones who was threatening and resistant. The Court will now assess the force employed here under the "objectively reasonable" standard of the *Graham* factors to determine if it was appropriate given the totality circumstances. *See Graham*, 490 U.S. at 397 ("whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.").

### (2) *Applying the Graham Factors*

Applying the *Graham* standard requires the Court to evaluate "(1) the severity of the crime at issue, (2) whether the suspect pose[d] an immediate threat to the safety of the

officers or others…[, and] (3) whether [she] [was] actively resisting arrest at the time of the arrest." *Deorle v. Rutherford*, 272 F.3d 1272, 1280 (9th Cir. 2001) (quoting *Chew v. Gates*, 27 F.3d 1432, 1440-41 (9th Cir. 1994)) (referring to the three step approach in *Graham*). Ultimately, the Court must weigh the interests of the government in enforcing the law and providing for the safety of police officers and bystanders against the individual's right to be free from intrusive and excessive force. *Graham*, 490 U.S. at 396. The Court recognizes the Ninth Circuit's caution that because "such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom […] summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002) (citations omitted).

### (a)    *Severity of the Crime*

The Defendants maintain the crime at issue in this case is Battery Upon a Police Officer under Idaho Code § 18-915 because Ms. Jones struck Deputy Edmunds. (Dkt. No. 22, Affs. Edmunds, Lyons, Hilton.) Ms. Jones claims the Defendants were only responding to an "unwanted person" investigation and argues such a crime is not sufficient to warrant the force that was used against her. Ms. Jones further notes she eventually plead guilty to the misdemeanor charge of Disturbing the Peace and was sentenced to jail time, probation, and fines. (Dkt. No. 1, ¶ 10.) Defendants' counter that

even if the facts are as Ms. Jones claims, she had committed the crime of trespass under Idaho Code § 18-7008(8) which subjected her to arrest and, therefore, the Defendant Deputies' actions in restraining and arresting Ms. Jones were justified.

In *Smith v. City of Hemet*, 394 F.3d 689 (9th Cir. 2005), the crime at issue was obstructing a police officer in performance of his duties. *Id.* at 698. The plaintiff in that case had refused to remove his hands from his pockets and was shot with pepper spray, thrown to the ground and while on the ground attacked by a dog three times and pepper sprayed four more times. *Id.* at 693-94. The Ninth Circuit there found that under police guidelines the force that was employed against the plaintiff was the highest possible short of deadly force and could not be justified by the minor infraction. *Id.* at 701-2. In *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052 (9th Cir. 2003), a mentally ill man suffered permanent brain damage when police took him to the ground and put their knees on top of him, causing him to asphyxiate. *Id.* at 1055. Though he had not committed any crime the Ninth Circuit concluded that "some force was surely justified in restraining [the plaintiff] so that he could not injure himself or the arresting officers." *Id.* at 1059. What was challenged in the case was not the takedown or the handcuffing, but the officers putting their weight on top of the plaintiff. *Id*. at 1057. The force used by the Defendant Deputies in this case is less than that used in *Smith* and may have been somewhat akin to that employed in *Drummond*.

Thus, the possible crimes applicable here include Disturbing the Peace, Trespass, and Battery Upon a Police Officer. Clearly Disturbing the Peace is the least sever with Trespass being next and Battery Upon a Police Officer topping out as the most sever crime applicable to this case. Obviously if the applicable crime is Battery Upon a Police Officer, this factor weighs in favor of the Defendant Deputies as the officers were justified in preventing Ms. Jones from injuring them. However, even if the lesser crimes of Disturbing the Peace and Trespass are considered to be the applicable crimes to this case, this factor still weighs in favor of the Defendant Deputies given the circumstances that evening. The Defendant Deputies were required to respond to the call from the establishment. Upon arriving, the officers were required to act and respond to Ms. Jones' refusal to leave the area, report that she had punched another patron, and her increasing level of threatening and belligerent behavior towards the Defendant Deputies.

### (b)    *Immediate Threat*

"[W]hether the suspect poses an immediate threat to the safety of officers or others" is the most important *Graham* factor. *Smith*, 394 F.3d at 702 (citing *Chew*, 27 F.3d at 1441). It is also the case that "a simple statement by an officer that he fears for his safety or the safety of others is not enough; there must be objective facts to justify such a concern." *Deorle*, 272 F.3d at 1281. In the cases discussed so far, the threat posed by the plaintiffs to the officers has been minimal. In *Smith*, the defendant, though he had his

hands in his pockets, was already known not to be armed. *Smith*, 394 F.3d at 693-94. In *Davis*, the plaintiff was handcuffed and surrounded by hotel security officers when he was beaten. *Davis*, 478 F.3d at 1051. In *Deorle*, the plaintiff was unarmed and thirty feet from the officer and had not been given a warning. *Deorle*, 272 F.3d at 1277-78. In *Brooks*, the police were confronted with a pregnant woman insider her vehicle. *Brooks*, 599 F.3d at 1020-21. Nevertheless, in *Brooks*, the Ninth Circuit found that the defendant posed some threat "by virtue of her continued non-compliance which weighs against finding the less-than-intermediate force excessive." *Id*. at 1029.

In contrast, Ms. Jones posed a greater threat to the Defendant Deputies here than any of the defendants in the previously discussed cases. Ms. Jones' Complaint alleges that she posed no threat to the Deputies as she was a "tiny, lone, unarmed, securely handcuffed female in the custody of several large and heavily armed male police officers." (Dkt. No. 1, ¶ 6.)[5] Ms. Jones claims she did not threaten or resist the Defendant Deputies or attempt to flee. These allegations, however, are only contained in Ms. Jones' Complaint. The Defendants have come forward with evidence countering Ms. Jones' allegations. (Dkt. No. 22, Affs. Edmunds, Lyons, Hilton.) The initial report to dispatch was that Ms. Jones was extremely intoxicated; was not "right in the head"; had been asked to leave and refused; and punched a customer. (Dkt. No. 22, Aff. Edmunds, Ex. B.)

---

[5] The Complaint states Ms. Jones is 5 foot 2 inches tall and weighs 125 pounds. (Dkt. No. 1, ¶ 6.)

The Affidavits of the Defendant Deputies describe Ms. Jones on the night in question as loud, belligerent, threatening and actively resisting arrest by grabbing and kicking out at the Defendant Deputies. (Dkt. No. 22, Affs. Edmunds, Hilton, Lyons.) Ms. Jones has presented no evidence to rebut the record as shown by the Defendants.

The evidence before the Court shows the facts known to the Defendant Deputies at the time was that Ms. Jones had already struck a patron and was refusing to leave the establishment. The officers' own observations of her at the scene indicated she was highly intoxicated, threatening, and resistant. Though Ms. Jones is a female with a slight build, her apparent level of intoxication and threatening/resistant behavior posed a threat to the Defendant Deputies as well as the public. Further, as the night progressed, the level of Ms. Jones' threatening and resistant behavior was increasing which justified the Defendant Deputies own increasing levels of responses to restrain and control her. Given these circumstances, it is clear that Ms. Jones posed a greater threat than the plaintiff in *Brooks*, which justifies the force the Defendant Deputies used against her which was greater than that used against the *Brooks* plaintiff. Considering all the circumstances, the force used by the Defendant Deputies to restrain Ms. Jones was proportionate to the threat she posed to the Defendant Deputies.

### (c) *Resisting Arrest*

The third *Graham* factor necessarily overlaps with the second given the facts of this case. In her Complaint, Ms. Jones denies resisting the Deputies. (Dkt. No. 1.) The Defendants have brought forth Affidavits as well as video and audio evidence indicating Ms. Jones was actively resisting the Deputies. (Dkt. No. 22, Affs. and Exs.) Ms. Jones has not brought forth any countering evidence. As such, the Court considers the facts as stated by the Defendant Deputies in their Affidavits to be undisputed for purposes of this Motion. *See* Fed. R. Civ. P. 56(e)(2). Having done so, the Court finds this factor to weigh in favor of the Defendants as all the officers stated and the audio/video shows that Ms. Jones resisted and refused to follow their commands. (Dkt. No. 22, Aff. Edmunds, Ex. C.)

### (3) *Consideration of the Totality of the Circumstances*

Because the touchstone of the Fourth Amendment is reasonableness and there is no mechanical test that will capture all of the relevant factors to determine whether a given use of force is excessive, courts must also consider the totality of the circumstances which can include such factors as alternative levels of force, warnings, the existence of probable cause or the conformity of the defendant officers' actions with department guidelines. *Brooks*, 599 F.3d at 1030. Whether alternative levels of force were available is particularly salient. While police officers "are not required to use the least intrusive degree of force possible" when carrying out an arrest it is still appropriate to consider

what their options were. *Forrester*, 25 F.3d at 807. Ms. Jones argues the Defendant Deputies could have used alternative "less violent methods of effectuating Renee Jone[s'] arrest...." (Dkt. No. 27, p. 10-11.)

The Defendant Deputies here, however, were justified in the amount of force employed to restrain and arrest Ms. Jones under the circumstances of this case. The crime or crimes for which Ms. Jones was potentially committing at the time were serious. Ms. Jones' extreme intoxication and increasingly threatening behavior necessitated a response by the Defendant Deputies both for their own safety and that of the public's safety. The continued refusal to obey officer commands and ultimately Ms. Jones' striking of Deputy Edmunds required the officers to take action to control the situation by restraining Ms. Jones. The fact that other alternatives to achieving that control may have existed, does not necessarily render the force used to be of a disproportionate nature given the increasing threat that Ms. Jones posed to the officers and other members of the public. Based on the foregoing and given the facts and circumstances presented in the record and unrebutted by Ms. Jones, the Court finds the Defendants did not violate Ms. Jones' constitutional right to be free from excessive force and the Motion for Summary Judgement will be granted on that claim. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) (holding where the court finds the Constitution was not violated the inquiry is at an end.)

**II.     Count II: 42 U.S.C. § 1985 Conspiracy Claims**

Even where, as here, no violation of a plaintiff's constitutional rights is shown,

Congress has created a cause of action to punish conspiracies to deprive those rights in 42

U.S.C. § 1985. There are multiple sections of § 1985 and Ms. Jones fails to specify which

section her claim falls under. Subsection (1) is designed to allow government officers to

perform their duties and subsection (2) is designed to protect parties, witnesses and jurors

from intimidation. *See* 42 U.S.C. § 1985(1), (2). Neither is at issue in this case making

subsection (3) the most likely applicable provision. Subsection (3) provides that there

shall be liability where two or more persons conspire "for the purpose of depriving, either

directly or indirectly, any person or class of persons of the equal protection of the laws, or

of equal privileges and immunities under the laws." 42 U.S.C. § 1985 (3). The Supreme

Court has interpreted § 1985(3) such that "the language requiring intent to deprive of

equal protection, or equal privileges and immunities, means that there must be some

racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the

conspirator's action." *Griffon v. Breckenridge*, 403 U.S. 88, 102 (1971).

In their motion for summary judgment here, the Defendants point out that Ms.

Jones is not a member of a protected class for the purposes of equal protection. Ms. Jones

does not allege that any action was taken against her because of her gender or other class

based protections. Indeed, Ms. Jones does not defend her § 1985 claim in her summary

judgment memoranda. (Dkt. No. 27.) Accordingly, pursuant to Dist. Id. Local Rule 7.1, the Court can deem the non-objection in her memorandum on this claim as consent to the granting of the motion for summary judgment on this claim. Further, because Ms. Jones must prove this element at trial, it is sufficient on this Motion that the Defendants point to a lack of evidence in order to show that there is no genuine issue of material fact for trial. *See* Fed. R. Civ. P. 56(e). With no rebuttal from Ms. Jones, the Court finds that there are no genuine material facts for trial concerning Ms. Jones' § 1985 claim and Defendants are entitled to summary judgment as a matter of law.

## III.    Counts III and IV: Municipal Liability

Ms. Jones seeks damages against both Kootenai County and Kootenai County Sheriff's Department (collectively the "Kootenai County Defendants") as well as Kootenai County Sheriff Rocky Watson. (Dkt. No. 1.)6 The Supreme Court has held in *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658 (1978) that "local governing bodies [...] can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where [...] the action that is alleged to be unconstitutional implements or executes a policy, statement, ordinance, regulation, or decisions officially adopted and promulgated by that body's officers." *Id.* at 690. The Court made clear that "a

---

[6] For the purposes of this analysis Chief of Police Watson (in his official capacity) and the Kootenai County Defendants will be treated as one, because both could be liable for enforcing a policy or custom that led to constitutional violations or for failing to properly respond to such violations including a lapse of training or deficient hiring practices.

municipality cannot be held liable *solely* because it employs a tortfeasor." *Id.* at 691 (emphasis in original).

Where, as here, there is no constitutional violation by the officers, there can be no municipal liability. The Supreme Court has held that no principle "authorizes the award of damages against a municipal corporation when […] the officer inflicted no constitutional harm." *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). This rule applies regardless of the actual policies of the municipality. *Id.* ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have *authorized* the use of constitutionally excessive force is quite beside the point.") (emphasis in original). Because the Court has concluded above that no constitutional violation occurred, the Motion will be granted as to the claims against the Kootenai County Defendants. However, even if Ms. Jones' constitutional claim were to have survived and a jury found that Ms. Jones suffered some constitutional injury, the Court would still find the Kootenai County Defendants to be immune from the excessive force claim as Ms. Jones has failed to bring forward any evidence of the existence of a custom or policy that led to constitutional violations against her.

### A. *Municipal Custom or Policy*

In order to hold a municipality liable Ms. Jones must show evidence "that a constitutional deprivation was directly caused by a municipal policy." *Nadell v. Las Vegas Metro. Police Dept.*, 268 F.3d 924, 929 (9th Cir. 2001) (citations omitted). The burden is on Ms. Jones to show a policy or custom on the part of the Kootenai County Defendants, which can be proven by the municipality's negligence in training or failure to respond to constitutional violations. *Gilette v. Delmore*, 979 F.2d 1342, 1349 (9th Cir. 1992). Ms. Jones, however, has offered no evidence of such a policy beyond her conclusory statements; nor has she produced any documents, statements or other records from Kootenai County or its police department to allege an official policy that would have justified an unconstitutional use of force against Ms. Jones. No argument regarding such policies or customs is raised in her brief in opposition to the Motion. (Dkt. No. 27.) Indeed, the only reference made by Ms. Jones to her claims are conclusory allegations in the Complaint. (Dkt. No. 1.) The Kootenai County Defendants have appropriately pointed to a lack of such evidence and have further presented Affidavits supporting their contention that no such policy or custom exists. (Dkt. No. 22, Affs. Edmunds, Hilton, Lyons, Watson.) Lacking any countering evidence, Ms. Jones' claims of a policy or custom fail. Ms. Jones' can then only claim a municipality is not immune from suit for the torts of its employees by showing that there was a custom with the force of policy to

deprive her of her rights. Here again, because Ms. Jones has failed to come forward with any such evidence beyond her allegations in the pleadings, the Motion is granted as to the claims against the Kootenai County Defendants.

### B.    *Municipal Indifference*

Even if, as here, a plaintiff cannot show evidence of a direct policy or a widespread custom a plaintiff "may attempt to prove the existence of a custom or informal policy with evidence of repeated constitutional violations for which the errant municipal officials were not discharged or reprimanded." *Gilette* 979 F.2d at 1349 (citing *McRae v. Shimoda*, 795 F.2d 780, 84 (9th Cir. 1986).). The Ninth Circuit established the elements that a plaintiff would have to show in order to evidence a custom through deliberate indifference:

> To impose liability on a local governmental entity for failing to act to preserve constitutional rights, a section 1983 plaintiff must establish: (1) that he possessed a constitutional right of which he was deprived; (2) that the municipality had a policy; (3) that the policy "amounts to deliberate indifference" to the plaintiff's constitutional right; and (4) that the policy is the "moving force behind the constitutional violation."

*Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (quoting *City of Canton v. Harris*, 489 U.S. 378, 384-91 (1989). (citations omitted). What is at issue is whether the policy exists and whether it amounts to deliberate indifference. The Ninth Circuit cautioned that "whether a local government entity has displayed a policy of deliberate indifference is generally a question for the jury." *Id.* at 1476. This does not mean, however, that

summary judgment is never appropriate. The Ninth Circuit has also held that "a plaintiff cannot prove the existence of a *municipal* policy or custom solely on the occurrence of a single incident of unconstitutional action by a non-policymaking employee." *Davis v. City of Ellensburg*, 869 F.2d 1230, 1233 (9th Cir. 1989) (emphasis in original) (citations omitted).

In this case Ms. Jones alleges the Kootenai County Defendants failed to properly hire, train, retain, discipline, or take necessary corrective action regarding the incident. (Dkt. No. 1.) Ms. Jones asserts these failure show deliberate indifference to unconstitutional actions on the part of the Kootenai County Defendants. The Ninth Circuit in *Davis* rejected the theory that a city could be stripped of municipal immunity simply on the occurrence of a single incident. *See Davis*, 869 F.2d at 1233. The Supreme Court, however, has indicated that "municipal liability may be imposed for a single decision by municipal policymakers under appropriate circumstances." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986). In that case a county had delegated certain decisions to the county prosecutor who ordered the action which resulted in a constitutional violation. *Id.* at 470. Like the plaintiff in *Haugen v. Brousseau*, 351 F.3d 372 (2003) Ms. Jones has failed to show how a single failure to discipline rises to the level of ratification of the Defendant Deputies' actions in this case. *Id.* at 393 (where the City of Puyallup failed to discipline an officer who shot a fleeing suspect in the back).

There is no evidence in the record of the Kootenai County Defendants failures as alleged by Ms. Jones in the Complaint. Lacking this evidence the municipal defendants are entitled to immunity. Further, the Defendants have come forward with evidence that no such custom or policy exists. (Dkt. No. 22, Aff. Watson.)

## CONCLUSION

When the Defendant Deputies handcuffed, hobbled, and restrained Ms. Jones, the force used was what a reasonable officer in the Defendant Deputies' position could have concluded was lawful. Therefore, the Defendant Deputies did not violate Ms. Jones' constitutional rights. Because Ms. Jones failed to establish that she was a member of a protected class for the purposes of equal protection or that any of the actions against her were motivated by her membership in a class there is no genuine issue of material fact for trial on her § 1985 claims. Likewise the Defendants Kootenai County and Kootenai County Sheriff's Department are immune from suit for the actions of its officers because Ms. Jones has failed to establish any constitutional violation or any evidence of a policy or custom of indifference that would condone constitutional violations. For these reasons summary judgment shall be granted in Defendants' favor.

## <u>ORDER</u>

**NOW THEREFORE IT IS HEREBY ORDERED** that Defendants' Motion for

Summary Judgment (Dkt. No. 22) is **GRANTED** and the case is **DISMISSED** in its

**ENTIRETY**.

DATED:  **January 13, 2011**

Honorable Edward J. Lodge
U. S. District Judge